**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Amerisure Mutual Insurance Company, a Michigan company,<br><br>Plaintiff,<br><br>v.<br><br>Houston Casualty Company, a Texas company,<br><br>Defendant. | CV-17-02269-PHX-DGC<br><br>**ORDER** |

Plaintiff Amerisure Mutual Insurance Company ("Amerisure") sued Defendant Houston Casualty Company ("HCC"), and HCC counterclaimed. Docs. 1-1; 35. The parties cross-moved for summary judgment, and the Court granted Amerisure's motion on HCC's duty to indemnify, HCC's duty to defend, and the lack of Amerisure's duty to indemnify, and denied both motions on Amerisure's duty to defend. Doc. 73. The parties resolved the remaining issues in the case (Doc. 77) and filed a joint proposed form of judgment awarding Amerisure $67,803.10 in prejudgment interest, from which HCC subsequently withdrew (Docs. 80, 81). The parties now dispute Amerisure's right to pre-judgment interest in the amount sought. Docs. 83, 84. For the following reasons, the Court will award $67,803.10 in prejudgment interest to Amerisure.

**I. Background.**

Amerisure calculates prejudgment interest based on the state interest rate of prime +1, which in this case equals 6.5% (5.5% + 1 = 6.5%). Doc. 84 at 2. Amerisure

applied this interest to the $212,814.80 it paid on behalf of the insured, Spectrum. The last of those payments – of which HCC had knowledge – was made on June 5, 2014. *Id.* 1,789 days elapsed between June 5, 2014 and the date of the stipulated form of judgment. The calculated daily interest of $37.90 for 1,789 days equals $67,803.10. Amerisure explains the daily interest figure as follows: "6.5% divided by 365 days equals 0.000178082. That number times $212,814.80 equals interest of $37.90 per day." *Id.*

HCC contends that prejudgment interest did not begin to accrue until the Court's summary judgment ruling on March 4, 2019, and therefore totals only $2,728.80. Doc. 83.

**II.  Discussion.**

Federal courts sitting in diversity apply state law in assessing prejudgment interest. *Am. Tel. & Tel. Co. v. United Computer Sys.*, 98 F.3d 1206, 1209 (9th Cir. 1996). In Arizona, litigants are entitled to prejudgment interest on liquidated claims. *Gemstar Ltd. v. Ernst & Young*, 917 P.2d 222, 237-38 (Ariz. 1996). "A claim is liquidated if the plaintiffs provide a basis for precisely calculating the amounts claimed." *Port United Inc. v. Sestus LLC*, No. CV-11-00367-PHX-ROS, 2014 WL 12521331, at *2 (D. Ariz. Sept. 29, 2014) (quoting *Gemstar*, 917 P.2d at 237). The amount owed must be subject to calculation "with exactness, without reliance upon opinion or discretion." *Scottsdale Mem'l Health Sys. v. Maricopa County*, No. 1 CA-CV 07-0150, 2010 WL 1255719, at *16 (Ariz. Ct. App. March 30, 2010) (quoting *John C. Lincoln Hosp. & Health Corp. v. Maricopa County*, 96 P.3d 530, 542 (Ariz. Ct. App. 2004)). "[T]he district court has discretion to determine the date of commencement of prejudgment interest." *Black & Decker (U.S.), Inc. v. All Spares, Inc.*, No. CV 09-2126-PHX-MHM, 2010 WL 3034887, at *3 (D. Ariz. Aug. 3, 2010) (quoting *AMHS Ins. Co. v. Mut. Ins. Co. of Ariz.*, 258 F.3d 1090, 1103 (9th Cir. 2001)).

Amerisure argues that HCC had all of the information needed to ascertain its liability on the date that Amerisure made its last payment on behalf of Spectrum. Doc. 84 at 3. HCC relies on *AMHS*, and argues that it could not ascertain its liability until policy coverage was determined because "more is required where insurance coverage for the claim is in dispute." Doc. 83 at 3.

In *AMHS*, a jury had previously found that Dr. Wesley Romberger negligently cared for his patient, Christina Beery, in an underlying medical malpractice action. 258 F.3d at 1092. Dr. Romberger had purchased professional liability insurance policies from Mutual Insurance Company of Arizona ("MICA") and Samaritan Health Systems. *Id.* at 1092, 1094. From the AMHS Insurance Company Risk Retention Group ("RRG"), Samaritan purchased four-layer "umbrella" coverage for itself and the multiple healthcare institutions and providers that it insured in the first instance. *Id.* Samaritan contributed 90% of the cost to defend Dr. Romberger and MICA contributed 10%. In two lump sum payments, RRG eventually paid Beery the more than seven million dollar judgment. *Id.* at 1092. MICA offered a maximum of $150,000 toward the settlement, and RRG sued MICA for bad faith and contribution. *Id.* On appeal, the parties disputed several issues regarding the interpretation and interaction of the policies, as well as the date on which prejudgment interest began to accrue. *Id.* at 1103.

To compute MICA's contribution, the Ninth Circuit had to determine whether MICA and RRG were primary, excess, or co-excess insurers of the Beery judgment. *Id.* at 1093. Romberger was covered by three separate RRG policies with different terms during his care of Beery. *Id.* at 1098. The court analyzed each policy and held that the first two coverage layers were specific excess policies that attached after the exhaustion of the underlying Samaritan Policy. Thus, MICA was required to share any loss over $1 million on a pro rata basis with RRG's first two layers. *Id.* at 1097-98. The court held that the third layer of the RRG policy was excess of all coverage up to $10 million, including the MICA policy. *Id.* at 1100. The court then had to determine which formula to use to calculate MICA's contribution level, the "policy limits" approach or the "maximum loss" rule – an issue not entirely clear under Arizona law – and applied the "policy limits" approach. *Id.* at 1102.

Regarding prejudgment interest, RRG had notified MICA of the amounts paid to Beery at the time of the payments in July 1996 and June 1997. *Id.* at 1103. But the district court found this notification insufficient to allow MICA to determine its liability with

"reasonable exactness." The Ninth Circuit affirmed, explaining that "[u]nder the 'policy limits' approach to prorating contribution, MICA's liability could not be discerned without reference to the total available insurance. RRG, therefore, was under a duty to inform MICA of the total policy limit applicable to the Beery judgment. RRG did not do so until September 19, 1997" when it sent MICA a complete copy of the relevant insurance policies. *Id.*

HCC argues that, like MICA, it "could not ascertain its liability until the applicable policy coverage was determined." Doc. 83 at 3. But even though the disputed issues underlying MICA's level of contribution and total coverage liability were more complex than simply which insurance policy applied, MICA's ability to calculate its liability did not depend on the court's final policy coverage determination. The Ninth Circuit instead held that MICA could determine its liability with reasonable exactness, and its claim was liquidated, once it had the relevant insurance policies and knew RRG's total policy limit. In any event, the Ninth Circuit found that the district court did not abuse its discretion in reaching its conclusion – it did not hold that Arizona law requires a different showing to prove a claim is liquidated when coverage is disputed.

Amerisure and HCC did not dispute the amounts at issue or whether either policy provided only partial coverage. HCC does not contend that it needed – or did not have – access to the relevant insurance policies. Amerisure claimed that HCC's policy provided total coverage, and HCC knew the precise amount paid by Amerisure and what it would be liable to pay if it lost. Thus, as of June 5, 2014 – the date that Amerisure made its last payment on behalf of Spectrum – HCC had the "basis for precisely calculating the amounts claimed." *Port United Inc.*, 2014 WL 12521331, at *2 (quoting *Gemstar*, 917 P.2d at 237). A "good faith dispute over liability will not defeat a recovery of prejudgment interest" on a liquidated claim. *Id.* (quoting *Fleming v. Pima County*, 685 P.2d 1301, 1307-08 (Ariz. 1984)); *see also In re Weinberg*, 410 B.R. 19, 38 (B.A.P. 9th Cir. 2009) ("In short, in [*Fleming* and *Gemstar*], the claims met the liquidation test under Arizona law because each was 'at all times susceptible to exact computation, no part of the amount was

subject to opinion or discretion, [and] it could have been determined with precision.'"); *Black & Decker*, 2010 WL 3034887, at *3 (claim was liquidated and prejudgment interest accrued on the last date defendant received invoice from plaintiff of amounts owed).

HCC argues in the alternative that the earliest date on which prejudgment interest began to accrue was September 29, 2014, when Amerisure provided HCC with a notice of a subrogation lien for a specific amount with supporting documentation. Doc. 83 at 4. HCC asserts that prior to September 29, "Amerisure did not disclose sufficient information to HCC to allow it to determine the reasonable exactness of the amount being claimed." *Id.* But HCC fails to develop this argument or cite supporting authority. HCC identifies no new information it received on September 29 that it did not have on June 5. And HCC does not argue that it was unaware of Amerisure's final payments on behalf of Spectrum made on June 5, nor that the information it had on June 5 was inaccurate.

**IT IS ORDERED**:

1. The Court concludes that the amount of prejudgment interest owed by Defendant to Plaintiff is $67,803.10.

2. Because Defendant will not be required to agree to the proposed judgment, its motion to withdraw (Doc. 81) is **granted**, but the Court will enter an order requiring payment of the prejudgment interest determined above.

3. On June 5, 2019, well after the stipulated judgment had been lodged by Amerisure and after the parties had, at the Court's request, briefed the prejudgment interest amount, Amerisure moved to withdraw from the stipulated judgment and asserted that it was entitled to prejudgment interest of 10%. Doc. 85. This argument is simply asserted too late – after the Court and the parties have briefed and analyzed this issue. The Court will grant Amerisure's previous request that it be awarded $67,803.10 in interest. *See* Doc. 84 at 4. Although Amerisure, like HCC, will not be required to agree to the proposed judgment and its motion to withdraw (Doc. 85) is therefore **granted**, the Court will award the prejudgment interest amount determined above.

4. It is ordered that the Clerk shall enter the following judgment:

- 5 -

**IT IS HEREBY ORDERED** that, pursuant to the Court's Order filed March 4, 2019, judgment is entered in favor of Plaintiff Amerisure Mutual Insurance Company and against Defendant Houston Casualty Company in the amount of $502,814.76, plus $67,803.10 in prejudgment interest. The remaining duty to defend claim is dismissed with prejudice.

Dated this 7th day of June, 2019.

_____
David G. Campbell
Senior United States District Judge